**Edgar B. SIMS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 7525.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 21, 1957.

Decided Feb. 7, 1958.

Fred H. Caplan, Asst. Atty. Gen., of West Virginia (W. W. Barron, Atty. Gen., of West Virginia, on brief), for appellant.

Mildred L. Seidman, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., Duncan W. Daugherty, U. S. Atty., Huntington, W. Va., and Percy H. Brown, Asst. U. S. Atty., Charleston, W. Va., on brief), for appellee.

Before SOPER, SOBELOFF, and HAYNSWORTH, Circuit Judges.

SOBELOFF, Circuit Judge.

The sole issue in this case is whether a state official who makes payment of accrued salaries to state employees in disregard of a notice of levy by the Commissioner of Internal Revenue for taxes due the United States by such employees may be held personally liable.

Edgar B. Sims, State Auditor of West Virginia, appeals from a judgment of $519.71 entered against him individually in favor of the United States for refusing to surrender the accrued wages of three employees of the state after the District Director of Internal Revenue had served notices of levy upon him.

The three employees owed federal taxes upon earnings in endeavors apart from their state employment. The Commissioner of Internal Revenue made an assessment of tax deficiencies as to each and forwarded the assessments to the Director of Internal Revenue at Parkersburg, West Virginia, for collection. The Director demanded payment 'from each of them, and, the deficiencies remaining unpaid for more than ten days, he served on the State Auditor notices of levy upon their accrued salaries pursuant to Section 6331 of the 1954 Internal Revenue Code (26 U.S.C.A.).[1] When the levies

---

1. 26 U.S.C.A. § 6331:

"(a) Authority of Secretary or delegate.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for

were made, the three employees had accrued "take home pay" totalling $519.71.

On the advice of the office of the Attorney General of West Virginia, the appellant refused to honor the notices of levy, and issued to each of the employees a warrant for the payment of his salary.

Thereafter, the government brought this suit in the United States District Court for the Southern District of West Virginia against Sims pursuant to Section 6332 of the 1954 Internal Revenue Code (26 U.S.C.A.),[2] to recover a sum equal to the value of the property not surrendered. As originally brought, the suit was against Sims individually and as Auditor of the State of West Virginia. The defendant filed a motion to dismiss the action, and the Court granted it insofar as it related to the defendant as Auditor of West Virginia, but overruled it as to Sims in his individual capacity. On the stipulated facts, the court entered judgment against Sims in the amount of $519.71 plus interest, and this appeal followed.

In unambiguous terms, Section 6331 authorizes the collection of delinquent taxes "by levy upon all property and rights to property" belonging to a delinquent taxpayer;[3] and it is not disputed that, in general, accrued wages are properly subject to levy. 9 Mertens, Taxation (1943), Sec. 49.165; United States v. Long Island Drug Co., 2 Cir., 1940, 115 F.2d 983, 986. See: 26 C.F.R. Sec. 301.6331-1(a) (1); II-1 Cum.Bull., 172 (I.T.1557) (1923).

In spite of the statute's broad language, the appellant contends that the accrued salaries of state employees must be treated differently. He relies heavily on the fact that in 1928 the Internal Revenue Service itself ruled that salaries of certain municipal officers were not subject to distraint while in the hands of a city treasurer. VII-1 Cum.Bull., 72 (I.T.2405) (1928).[4] Since this ruling

---

immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

"(b) Seizure and sale of property.—The term 'levy' as used in this title includes the power of distraint and seizure by any means. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible)."

2. 26 U.S.C.A. § 6332:

"(a) Requirement.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge such obligation) to the Secretary or his delegate, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

"(b) Penalty for violation.—Any person who fails or refuses to surrender as required by subsection (a) any property or rights to property, subject to levy, upon demand by the Secretary or his delegate, shall be liable in his own person

and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes for the collection of which such levy has been made, together with costs and interest on such sum at the rate of 6 percent per annum from the date of such levy.

"(c) Person defined.—The term 'person,' as used in subsection (a), includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to surrender the property or rights to property, or to discharge the obligation."

3. However, subsection (a) of Section 6334 of the 1954 I.R.C. (26 U.S.C.A.) lists certain exemptions, including wearing apparel, school books, fuel, and provisions. Subsection (c) concludes that, "Notwithstanding any other law of the United States, no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)."

4. VII-1, Cum.Bull. 72 (I.T. 2405) (1928): "The inquiry as to whether the collector may distrain upon the salaries of the officers and employees of the M Street Railway and the M Water Board while in the hands of the city treasurer is answered in the negative. In I.T.1557 (C.B. II-1, 172) it was held that the

was not expressly revoked until 1955 (1955–1 Cum.Bull., 551 Rev.Rule 55–227), Sims contends that "there appears to have been congressional acquiescence in the longstanding interpretation."

 Administrative interpretations are not absolute rules of law which must necessarily be followed in every instance, but are only helpful guides to aid courts in their task of statutory construction. The extent to which a court will place reliance upon an administrative interpretation depends on the circumstances, including the general purpose of the act, the authoritative source of the regulation or ruling, the clarity of the statutory language, the consistency of administrative policy, and whether administrative interpretation was brought to the attention of the legislators when they re-enacted, modified, or refused to change the statute. Cf., e. g., Helvering v. New York Trust Co., 1934, 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361; United States v. Leslie Salt Co., 1955, 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441. See: Brown, "Regulations, Reenactment and the Revenue Acts," 54 Harv.L.Rev. 377 (1941).

 Since departmental rulings not promulgated by the Secretary of the Treasury "do not commit the Depart-ment to any interpretation of the law which has not been formally approved and promulgated by the Secretary" (see the cautionary notice published as a preface to the Cumulative Bulletins), Mr. Justice (later Chief Justice) Stone referred to them as being "of little aid in interpreting a tax statute." Biddle v. Commissioner, 1938, 302 U.S. 573, 582, 58 S.Ct. 379, 383, 82 L.Ed. 431. The first authoritative declaration was not made until 1955, shortly after the enactment of the Internal Revenue Code of 1954 (but before the levy in this case [5]), when a Treasury Regulation, 26 C.F.R. Sec. 301.6331–1(a) (4) (ii), expressly declared that Section 6331 permitted levy on accrued salaries of state and municipal employees. That the Treasury Department was not committed to the 1928 ruling (I.T.2405) is borne out by the fact that there was no uniform adherence to its principle, but rather that it was repeatedly, if not consistently, ignored. It is noted that as early as 1935, the Government sought to levy upon the accrued salary of an employee of Woodbury County, Iowa. See: United States v. Brechtel, 8 Cir., 1937, 90 F.2d 516.[6] There are numerous other instances of levies on state employees' salaries.[7]

---

*accrued* salary or wage of an employee subject to the call or order of such employee may be levied upon. Quite probably it would be within the power of Congress to authorize distraint upon salaries and wages paid by a State or municipality for services rendered in connection with the exercise of a nongovernmental function. I.T.1557, however, refers to salaries paid by private persons and corporations and is based upon the analogy of accrued wages to bank deposits, within the purview of section 3187, Revised Statutes, and not upon any specific provision of that section. It is not believed that the analogy should be extended to include salaries paid by a State or municipality operating public utilities, even though such activities are considered a proprietary rather than a governmental function."

5. The regulation went into effect on January 1, 1955. 1955–1 Cum.Bull., p. 195, Sec. 7851. Two of the notices of levy were served on Sims on October 27, 1955, and the third was served on December 14, 1955.

6. The court held, on the authority of Collector v. Day, 1870, 11 Wall. 113, 20 L. Ed. 122, that the salary was not constitutionally subject to levy. See: Helvering v. Gerhardt, 1938, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427; Graves v. People of State of New York ex rel. O'Keefe, 1939, 306 U.S. 466, 486, 59 S.Ct. 595, 601, 83 L.Ed. 927, explaining that the effect of Helvering v. Gerhardt is that Collector v. Day and the cases decided thereunder "are overruled so far as they recognize an implied constitutional immunity from income taxation of the salaries of officers or employees of the national or a state government or their instrumentalities."

7. E. g., the June 23, 1943, issue of the Wall Street Journal contains an article entitled, "U. S. Acts to Prevent Income –

It does not appear that Congress was, at any time, cognizant of the 1928 ruling (I.T.2405), and, for this additional reason, it cannot be said that it received legislative ratification. "Whenever congressional awareness of the administrative interpretation does not appear and seems unlikely, the basis for the re-enactment rule vanishes." Davis, Administrative Law (1951), Ch. 5, Sec. 59, p. 208. Dean Griswold has said, " * * * the mere re-enactment of a statute following administrative construction should be given no weight whatever in determining the proper construction of the statute." Griswold, "A Summary of the Regulations Problem," 54 Harv.L. Rev. 398, 400 (1941). The evidence is to the contrary of the basic assumption of the re-enactment rule, for when the Chief of Staff of the Joint Committee on Internal Revenue Taxation inquired, in 1950, whether the statutes relating to levy were applicable to a state, the Acting Commissioner of Internal Revenue replied in a letter that "this office believes it has the authority to collect taxes from State employees and contractors who are delinquent as regards those taxes by service of notices of levy on State officials holding monies due to those delinquent taxpayers." Thus, if any Congressional ratification of administrative policy is to be found, it would appear that Congress ratified the practice of which it was specifically made aware rather than the earlier ruling of which there is no evidence that it had any knowledge.

■ The appellant has suggested that the express provision in Section 6331 for levy upon the accrued salaries of employees of the federal government and the omission of reference to state employees indicate an intention on the part of the legislators to withhold authorization from the Commissioner of Internal Revenue with respect to the latter. The legislative history of Section 6331 does not reveal the existence of any such negative intention, however, and both the House and the Senate Committee Reports merely contain the statement that "The provisions as to levy on salaries of Government employees are the same as those applicable to any other delinquent taxpayer." H.Rep. No. 1337, 83rd Cong. 2nd Sess., S.Rep.No.1622, 83rd Cong. 2nd Sess., 1954 U.S.Code Cong. and Adm.News, pp. 4556, 5225.

Another and more likely explanation is at hand for the specific reference in Section 6331 to levy upon federal employees' salaries and the failure to mention state employees. It lies in a problem peculiar to the federal government. In Smith v. Jackson, 1918, 246 U.S. 388, 38 S.Ct. 353, 62 L.Ed. 788, it was held that a federal disbursing officer has no right to set-off, against a federal employee's salary, for debts owing to the United States. Accordingly, the Comptroller General ruled that notices of levy are "attempts to set off the tax indebtedness due to the United States against moneys due from the United States to the debtor," and "the administrative official served with such notice would be without authority to withhold any portion of the current salary of such employee in satisfaction of the notices of levy and distraint." 26 Comp.Gen. 907, 912 (1947). Undoubtedly, Section 6331 was designed to alleviate this difficulty and to subject federal employees to the same collection procedures as are available against all other taxpayers, including employees of the state.

It is noteworthy that a closely related collection remedy, the tax lien, has been held applicable to money in the hands of a state. Where the State of California owed rent to a delinquent taxpayer, it was held that the Government could establish a lien upon it, and that the state could properly be subjected to a suit to foreclose the lien. United States v. Graham, D.C.S.D.Cal.1951, 96 F.Supp. 318, affirmed sub. nom. State of California v. United States, 9 Cir., 1952, 195 F.2d 530, certiorari denied 344 U.S. 831,

Tax Evasion by N. Y. State Workers," relating that a notice of levy had been served upon New York officials and that

the State Comptroller, on advice of the Attorney General of New York, honored it.

73 S.Ct. 36, 97 L.Ed. 647. See also, United States v. Newhard, D.C.W.D.Pa. 1955, 128 F.Supp. 805, where the government successfully enforced a tax lien against the wages of a county employee. It would indeed be an incongruity for the lien and levy provisions to receive contrary interpretations, particularly as the language of Section 6321, which provides for "a lien in favor of the United States upon all property and rights to property" of a delinquent taxpayer, is almost identical with the language of Section 6331. Neither logic nor the language of the statute demands such a result.

There is no Constitutional requirement that the salaries of state employees shall be treated differently from the salaries of others. Helvering v. Gerhardt, 1938, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427; Graves v. People of State of New York ex rel. O'Keefe, 1939, 306 U.S. 466, 486, 59 S.Ct. 595, 83 L.Ed. 927. And the statute, Section 3401(C), 1954 I.R.C., (26 U.S.C.A.) which defines "employees," for withholding tax purposes, in terms includes state employees. More broadly considered, as Mertens said in commenting upon the 1928 ruling (I.T. 2405), "There seems to be no conceivable ground for this discrimination in favor of such employees." 9 Mertens, Taxation (1943), Sec. 49.165, p. 141, n. 41. "As we have frequently pointed out, statutes should be construed to avoid absurd consequences, as Congress must be presumed not to have intended what was absurd * * *." Jacobs v. Tawes, 4 Cir., 1957, 250 F.2d 611, 615.

Accordingly, we hold that Section 6331 authorized levy upon the accrued salary of a state employee.

Sims next contends that, even if the salaries of state employees may be levied upon, he is not subject to the suit for penalty because he is not a "person in possession of (or obligated with respect to)" the property upon which the levy was made. 26 U.S.C.A. § 6332. He argues that if he was in possession of the wages, he was in possession of them (or

obligated with respect to them) in his capacity as State Auditor and that, "As an individual, the appellant had no more possession of or control over the wages of the taxpayers than any other individual private citizen of the state." Since the action against him as State Auditor has been dismissed, and he is now being sued only as an individual, Sims concludes that he cannot be liable.

However, by its very definition of the word "person," Section 6332 permits an action against an individual "in his own person and estate" who has held property subject to levy in a purely representative capacity or whose obligation with respect to property arises solely from his employment. In terms, it includes a person who as "officer, employee, or member is under a duty to surrender the property or rights to property, or to discharge the obligation."

We hold that under the laws of West Virginia, the State Auditor is an officer obligated with respect to the salaries of state employees within the meaning of Section 6332. He issues the warrants directing the disbursement of wages, and employees entitled to payment for their services may enforce their rights by mandamus against him. State ex rel. Board of Governors of West Virginia University v. Sims, 1949, 133 W.Va. 239, 55 S.E.2d 505; State ex rel. Board of Governors of West Virginia University v. Sims, 1952, 136 W.Va. 789, 68 S.E.2d 489, 490; State ex rel. Board of Governors of West Virginia University v. Sims, 1954, 140 W.Va. 64, 82 S.E.2d 321, 328. In addition, the State Auditor is authorized to deduct and withhold sums from employees' wages "to pay taxes as may be required by an act or acts of the congress of the United States of America." 1 W.Va.Code (1955), Sec. 1031(1) [12–3–13a]. Therefore, Sims having been under a duty to surrender the property demanded of him, he is subject to the penalty which Section 6332 imposes upon any person who fails or refuses to honor the levy, namely, liability in his own person and estate to the United

States in a sum equal to the value of the property or rights not so surrendered.

 Sims urges, however, that his refusal to honor the notices of levy was an act performed within the scope of his official duty and that he should not be personally liable for the consequences. It is, of course, generally true that a public officer engaged in non-ministerial duties will not be civilly liable for an act performed within the scope of his authority, even if that act is based upon an erroneous construction of law. The rule is a reasonable one, designed to protect public officers from the harassment of private individuals allegedly injured by the official acts, and to insure effective administration of the law. 43 Am.Jur., "Public Officers," Secs. 274, 275, p. 87; Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 138, 118 A.L.R. 1440; Randall v. Brigham, 1868, 7 Wall. 523, 536, 19 L.Ed. 285; Papagianakis v. The Samos, 4 Cir., 1950, 186 F.2d 257, 260. But that is not to say that the Congress may not insure the effective administration of the federal tax laws and secure its rights in the collection of revenue by imposing a penalty upon those who refuse to honor government levies.

We do not overlook the fact that the definition of "person" in Section 6332 (c), in terms includes an officer or employee of a corporation who, as such officer or employee, is under a duty to surrender property or rights, but does not specifically mention public officers. It is not to be supposed, however, that Congress intended the definition to be restrictive and applicable only to corporate officers. In a legal context where, as we have seen, salaries due public employees are subject to the lien and levy procedures that apply to others, no reason appears for interpreting Subsection (c) of Section 6332 as narrowing the breadth of the other subsections which insure the effectiveness of levies made upon salaries of public employees.

 We hold that Congress has imposed the liability of Section 6332 upon any person who refuses to surrender property subject to the provisions of Section 6331, including state officials.

The judgment must, therefore, be Affirmed.